George E. MERCIER, et al.,
Plaintiffs, Appellants,

v.

SHERATON INTERNATIONAL, INC.,
a/k/a, ITT–Sheraton International,
Inc., Defendant, Appellee.

No. 90–1888.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.
Decided June 4, 1991.

James M. Hartman with whom Harris Beach & Wilcox and Mary Ann Campany were on brief, Rochester, N.Y., for plaintiffs, appellants.

David S. Mortensen with whom Stephen C. Reilly and Hale and Dorr were on brief, Boston, Mass., for defendant, appellee.

Before CAMPBELL and CYR, Circuit Judges, and POLLAK, Senior District Judge.*

LOUIS H. POLLAK, Senior District Judge.

Susan and George Mercier appeal the district court's dismissal of their diversity breach of contract suit against Sheraton International, Inc. ("Sheraton International"). The district court dismissed the diversity action on grounds of *forum non conveniens*, concluding that the Republic of Turkey was a more suitable alternative jurisdiction in which to pursue this suit.

## I. *Facts and Procedural History*

At all times relevant to this suit, Susan and George Mercier—daughter and father—were United States citizens. At the time the suit was brought, Susan Mercier was a New York citizen; her father was a Florida citizen. Sheraton International is a Delaware corporation with its principal place of business in Massachusetts.

According to the complaint, this dispute had its incipience in 1982, when Susan Mercier was operating a casino on a Greek cruise ship that made weekly stops in Istanbul. In the course of her visits to Istanbul, Susan Mercier met George Bauer, manager of the Istanbul Sheraton Hotel. Bauer and Susan Mercier entered into dis-

---

* Of the Eastern District of Pennsylvania, sitting by designation.

cussions regarding the possibility that Susan Mercier would undertake to operate a casino in the Istanbul Sheraton. Concomitant with these discussions, Bauer apparently introduced Susan Mercier to a Turkish national, Fethi Deliveli, with the thought that Susan Mercier and Deliveli might become business partners, thereby satisfying a Turkish law requiring foreigners doing business in Turkey to have Turkish partners.

Many of the remaining events remain murky. Apparently negotiations commenced between Susan Mercier, George Mercier and Deliveli regarding the terms of their partnership while at the same time negotiations continued between the Merciers and Bauer regarding the casino operation. The Merciers assert that at least some of these negotiations occurred when Bauer visited the United States and that these negotiations included contacts between Bauer and other potential American investors in the casino project.

Sometime in 1983, Susan Mercier, Deliveli and Bauer (on behalf of Sheraton International) signed a Memorandum of Understanding that provided the basic terms for the establishment and operation of a casino in the Istanbul Sheraton. The Memorandum essentially provided that in return for an annual fee paid to Sheraton International, the Merciers and Deliveli would be permitted to operate a casino in the hotel. There is disagreement about whether all terms of the Memorandum were satisfied.

In March 1984, Bauer and Deliveli[1] signed a Protocol establishing the terms and conditions for operation of a casino at the Istanbul Sheraton. Sheraton contends that this agreement superseded the earlier Memorandum; the Merciers contend that the earlier Memorandum remained in effect.

Among other things, the Protocol provided that (1) the Protocol would come into force only after Sheraton's "owning company"—the company that owned the hotel site on which the Istanbul Sheraton was located—approved the concept of gambling; (2) if such approval was not forthcoming within ninety days of the Protocol's signature, the Protocol would be null and void; and (3) the Protocol was to be "governed by Turkish laws and the jurisdiction will Istanbul, Turkey" [sic].

Susan Mercier settled in Turkey and began to prepare for the casino's opening. In January 1986, however, she was involved in a violent altercation with a Turkish national who had served as her translator. Susan Mercier claims that the Turkish national attacked her when she rejected his marriage proposal; however, it appears that her alleged attacker filed charges with the Turkish authorities. As a result, Susan Mercier fled Turkey. An October 1986 State Department telex reported that Susan Mercier had been charged with assault, a felony, and would probably be arrested if she reentered Turkey. Appendix, at 91.

Roughly contemporaneous with Susan Mercier's difficulties, the Mercier–Deliveli partnership foundered. In the summer of 1986, the Merciers conveyed their shares in Lidya to Deliveli and in return received 101 slot machines held by Lidya. The Merciers also succeeded to any interest and rights held by Lidya and Deliveli stemming from the Memorandum and Protocol.

Simultaneously, the Merciers entered into negotiations with Leisure Investments P.L.C. (Leisure), a British company, regarding a partnership to operate the Sheraton casino.[2] However, it appears that, in the fall of 1987, Leisure and Sheraton International entered into their own agreement providing for Leisure to be the sole operator of a casino and that casino operations commenced, without the Merciers, sometime in 1988.

The Merciers first filed suit in the United States District Court for the Western District of New York against Leisure and The Sheraton Corporation, Sheraton International's parent. In October 1989, the dis-

---

**1.** Deliveli signed on behalf of Lidya Turisktik Teiler Isletmesi, A.S. ("Lidya"), a corporation in which both the Merciers and Deliveli held shares.

**2.** The Turkish law requiring foreigners operating in Turkey to have Turkish partners had apparently been changed. Affidavit of Susan Mercier at ¶ 43.

trict court dismissed the action against The Sheraton Corporation on the ground that the Merciers, in naming the parent company rather than Sheraton International, had sued an entity not a party to the agreements. The Merciers responded to the partial dismissal[3] by filing the instant Massachusetts action and naming Sheraton International as defendant. Sheraton International moved for dismissal on grounds of *forum non conveniens.*

The district court granted Sheraton International's motion to dismiss. 744 F.Supp 380. Undertaking a two-part analysis first set out by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the district court first considered whether there was an adequate alternative forum for the Merciers' suit. It concluded that Turkey was such a forum. The district court then proceeded to weigh various factors related to the private interests of the parties and to the public interest. The district court concluded that private interest factors favored retaining the case, but that public interest factors counseled dismissal. Finally, the district court concluded that the public interest factors outweighed the private interest factors by such an extent that dismissal was warranted.

The Merciers now appeal that dismissal. They claim that the district court erred in concluding (1) that Turkey was an adequate alternative forum, and (2) that the balance of private and public interest factors preponderated strongly in favor of dismissal.

## II. *Discussion*

### A. Standard of Review and Governing Principles

■ *Forum non conveniens* determinations are committed to the district court's sound discretion. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). This court will find an abuse of discretion only where the district court (1) failed to consider a material factor, or (2) substantially relied on an immaterial factor, or (3) assessed the appropriate factors but the district court clearly erred in weighing factors correctly considered. *U.S. v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 660 (1st Cir.1990); *Independent Oil & Chemical Workers Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988).

■ In *Gulf Oil Corp. v. Gilbert,* supra, and its companion case, *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court set out the appropriate analysis for a district court to undertake when presented with a motion to dismiss on grounds of *forum non conveniens.* Those cases establish that a district court exercising its sound discretion may dismiss a case

> when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."

*Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. at 258 (citing *Koster,* 330 U.S. at 524, 67 S.Ct. at 831).[4] Thus, a party moving for dismissal bears the burden of establishing that (1) there is an adequate alternative forum, *Tramp Oil and Marine, Ltd. v. M/V Mermaid I,* 743 F.2d 48, 50 (1st Cir. 1984), and (2) that considerations of conve-

---

3. The suit continues against Leisure.

4. *Koster* involved a suit brought in New York but in which it was alleged that Illinois was a more convenient forum. It arose before the enactment of 28 U.S.C. § 1404(a), which permits transfer of cases from one federal district court to another more convenient federal court. While the transfer statute was based on *forum non conveniens* doctrine, the statute gives district courts greater discretion to transfer than

they enjoyed to dismiss under the common law *forum non conveniens* doctrine. *Piper Aircraft,* 454 U.S. at 253, 102 S.Ct. at 264. With the enactment of § 1404(a), the common law doctrine of *forum non conveniens* has lost some of its scope; its primary significance today is its application in cases where it is alleged that another country is a more convenient forum. 15 C. Wright and A. Miller, *Federal Practice and Procedure* § 3828 at 279–80 (2d ed. 1986).

nience and judicial efficiency strongly favor litigating the claim in the second forum.

■ A finding that there is a suitable alternative forum is usually justified as long as the defendant is amenable to process in the other forum. *Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842. In rare circumstances—such as when the alternative forum does not permit litigation of the subject matter of the dispute—an alternative forum may be inadequate, even if service can be accomplished. *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22; cf. *Rasoulzadeh v. Associated Press*, 574 F.Supp. 854 (S.D.N.Y.1983) (refusing to dismiss in order that claim could be litigated in Iran due to fear that plaintiff would be shot if appearing in Iran), *aff'd without opinion*, 767 F.2d 908 (2d Cir.1985). As stated by the Fifth Circuit, a finding that there is a satisfactory alternative forum requires that (1) all parties can come within that forum's jurisdiction, and (2) the parties will not "be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir.1987).

■ Once having concluded that an adequate alternative forum exists, a district court is then to consider whether the balance of convenience and judicial efficiency favors litigating the claim in the alternative forum. The district court should undertake this inquiry mindful that the *forum non conveniens* doctrine's principal purpose is to ensure that trials are convenient, both for the parties and for the court. *Piper Aircraft*, 454 U.S. at 256 & 256 n. 23, 102 S.Ct. at 266 & 266 n. 23.

The Supreme Court has identified a number of private and public interest factors that are to guide this aspect of the district court's inquiry. The private interest factors include

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; ... all other practical problems that make trial of a case easy, expeditious and inexpensive [and] questions as to the enforceability of a judgment if one is obtained.

*Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors include

the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. The plaintiff's forum choice "should rarely be disturbed," *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843; thus, "the moving defendant ... must establish that the private and public interests weigh heavily on the side of trial in the foreign forum." *In re Air Crash*, 821 F.2d at 1164; *accord Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir.1991) (hereinafter *Lacey II*).

With these principles in mind, we now turn to the merits of the appeal.

### B. Adequate Alternative Forum

■ The district court concluded that the Republic of Turkey was an adequate alternative forum. In doing so, it relied principally on an affidavit submitted by Sheraton International. The affidavit was taken by Yucel Sayman, a professor of law and practicing attorney in Istanbul.[5] After summarizing his professional qualifications, and explaining his (correct) understanding

---

5. The affidavit was originally prepared for use in the suit brought in the Western District of New York. The district court in the present action concluded, and we agree, that its use in this litigation was not improper given plaintiffs' concession that the instant litigation is nearly identical—save that the proper Sheraton entity has been named as defendant in the suit *sub judice*—to that originally brought in New York.

that the Merciers were making claims for breach of contract and tortious interference with contract, Sayman states,

> The courts of Istanbul are competent to hear the claims stated in the complaint filed by the Merciers in the above-captioned proceeding. In such a civil proceeding before our courts the litigants are guaranteed the same sort of procedural safeguards I understand they enjoy in the United States. They are entitled to be heard, to present evidence, and to cross-examine their opponent's witnesses. The judgment of the trial court is subject to review by an appellate tribunal called, "Yargitay"—Court of Appeals. Our constitution grants standing to foreign nationals, such as the Merciers, to prosecute such commercial claims in our courts.

Affidavit of Yucel Sayman at ¶ 3.

Before the district court, the Merciers objected that this affidavit was insufficient to establish that Turkey is an adequate alternative forum. In particular, they argued that the Sayman affidavit was deficient because it did not discuss (1) Turkey's substantive law of contract, (2) statute of limitations and fee arrangements, and (3) whether Turkey would take jurisdiction of a dispute in which neither party is a Turkish national. District court opinion, at 383–84. The Merciers renew these objections on appeal. Moreover, even should these issues be resolved in Sheraton International's favor, the Merciers contend that Susan Mercier's difficulties with the Turkish authorities make it impossible for her to return to Turkey, rendering Turkey unavailable for all practical purposes. Finally, the Merciers direct our attention to authority apparently not provided to the district court suggesting that Turkey has a one-year statute of limitations that would bar the claims sought to be pursued in the present action.

The district court found that Turkey was an adequate alternative forum—a finding based largely on the Sayman affidavit.[6] Noting that Sayman's affidavit was "sparse," Opinion at 384, the district court nonetheless concluded that the affidavit provided a sufficient showing that Turkey was an adequate forum because (1) it was not substantively refuted by the Merciers, (2) it addressed several important areas such as standing, cross examination and the Turkish court's competence to hear the claims, and (3) there was no specific indication of the presence of any of the traditional grounds for finding a lack of an adequate alternative forum.

 We believe the district court erred. We are mindful of the Merciers' failure to provide competing evidence on this issue; nevertheless, it remains the moving defendant's burden to establish that an adequate alternative forum exists. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988). As we conclude that the affidavit through which Sheraton International attempted to meet its burden contains substantial gaps, we believe the district court acted prematurely in finding that Turkey is an adequate alternative forum.

While cognizant of the district court's discretion in such issues, we believe that the affidavit failed to satisfy fully the initial burden which must be shouldered by a defendant seeking a *forum non conveniens* dismissal. Among the affidavit's most notable defects is its failure to state expressly that Turkish law recognizes claims for breach of contract and tortious interference with contract—or some analogous action.[7] A general recitation such as

6. The district court also held that Susan Mercier's personal difficulties were not adequate reason to conclude that Turkey was inadequate. The district court noted that Susan Mercier's personal situation "does not affect Sheraton's amenability to suit in Turkey; nor does it affect the competence of the Turkish court to hear the case." The court then commented that Susan Mercier's personal situation did not render a remedy unavailable in Turkish courts, rather it made Susan Mercier hesitant to take the steps necessary to avail herself of that remedy. Thus, the district court thought that Susan Mercier's personal difficulties do not satisfy any of the traditional conditions under which an adequate alternative forum is found not to exist.

7. *We recognize that the Supreme Court has cautioned against refusing to dismiss on forum non conveniens grounds simply because a foreign*

Sayman's that the alternative forum can adjudicate "commercial claims," Sayman affidavit, ¶ 3, simply fails to provide a sufficient basis upon which confidently to conclude that Turkey will take cognizance of this dispute.

The affidavit is even more defective with respect to statute of limitations issues: it wholly fails to address this question. We note that, at the oral argument of this appeal, Sheraton International's counsel expressed a willingness to waive Sheraton International's right to raise in Turkish courts any statute of limitations claim that would not be available should the action go forward in Massachusetts. That concession is insufficient for two reasons. First, it comes too late to have any bearing on whether the district court—not apprised of such a willingness—properly found Turkey to be an adequate alternative. Second, even given a willingness on Sheraton International's part to abandon such defenses, the Merciers must be given an opportunity to address the question whether Turkish courts would accept such a waiver [8]—and, if they would not, to argue the effect of such a refusal to the court deciding the *forum non conveniens* motion.

■ Our conviction that the district court erred in finding that Turkey is an adequate alternative is bolstered by the district court's own findings. The district court stated that its decision was partially premised on the conclusion that, Susan Mercier's difficulties notwithstanding, George Mercier remained free to bring their case in Turkey. The district court noted, however, that "Susan must be afforded an opportunity to present her evidence through affidavits and depositions, etc. Assuming that she is able to do so, I

believe a Turkish court will be able to competently and fairly judge the Merciers' complaint." Opinion at 385. Having stated its belief that Susan Mercier's testimony was essential to the prosecution of this case, the district court failed to attach any conditions to its dismissal that would ensure that such testimony would be considered. By "assuming" that Susan Mercier would be allowed to present testimony, rather than requiring an affirmative demonstration to that effect, the district court mistakenly relieved the moving defendant of its burden of assuring the district court that all conditions essential to establishing an adequate alternative forum exist.

■ Finally, the rather summary fashion in which the affidavit announces its conclusions inspires little confidence. This fact standing alone—or any of the other defects of the Sayman affidavit standing in isolation—might not warrant reversal. Cumulatively, however, they suggest sufficient uncertainty about Turkey's capacity and readiness to entertain this suit that defendant should have been required to provide further evidence and assurances to the district court before dismissal was granted. At a minimum, the district court should have granted a dismissal conditioned on the Turkish courts' actually taking cognizance of a substitute action. Cf. *Ahmed v. Boeing Co.*, 720 F.2d 224 (1st Cir.1983) (affirming conditional dismissal).

The Merciers urge us to decide that Turkey is incapable of ever serving as an adequate alternative forum. The Merciers advance two grounds for such a conclusion. First, they highlight Susan Mercier's personal difficulties and argue that her flight from, and refusal to return to, Turkey will

---

forum does not recognize an identical cause of action. *Piper Aircraft*, 454 U.S. at 254–55, 102 S.Ct. at 265–66. However, the *Piper* Court also stated that "dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* at 254 n. 22, 102 S.Ct. at 265 n. 22. Thus, it is incumbent upon the defendant moving for dismissal on *forum non conveniens* grounds to establish that there is a meaningful cause of action available in the proposed alternative forum.

8. The notion that the Turkish courts might refuse to recognize Sheraton International's voluntary abandonment of statute of limitations defenses might seem odd to those familiar with American practice, where such waivers are regularly recognized. However, we find the possibility of such a refusal no more implausible than the well-accepted American rule barring a federal court from accepting a defendant's waiver of jurisdictional defects. See *Moore's Federal Practice*, ¶ .60[4] (2d ed. 1988).

preclude meaningful prosecution of the Mercier claims. However, we share the district court's doubts that Susan Mercier's personal difficulties with the Turkish system—as opposed to a showing of Turkish justice's systematic inadequacy—can provide an appropriate basis for a finding that Turkey is an inadequate forum.

■ We leave this issue open for exploration on remand, however, in light of the district court's previously expressed view that Susan Mercier's testimony is essential to the case. Should it be the case that Turkish courts will refuse to admit the affidavit or deposition testimony of Susan Mercier due to her fugitive status, the district court on remand may be justified in concluding that Turkey is an inadequate alternative forum. However, absent an absolute, or near-absolute, prohibition on the admission of such testimony that would gut the core of the Merciers' action—thus rendering Turkey inadequate—we believe restrictions on Susan Mercier that flow from her flight from Turkey do not make Turkey inadequate. In particular, if the district court reasonably determines that (1) Susan Mercier's testimony would be admitted by a Turkish court, or (2) her testimony is not essential to the presentation of the Merciers' claim, we would then find merit in the district court's conclusion that George Mercier's ability to serve as surrogate by bringing an action in Turkey adequately addresses Susan Mercier's difficulties.

■ The Merciers also urge that we find Turkey inadequate based on considerations of Middle East upheaval and via judicial notice of the "injustice prevalent in the Turkish legal system when a foreigner (especially a woman) opposes a Turkish man." Appellants' brief, 27–28. In advancing this claim, the Merciers rely principally on *Rasoulzadeh v. Associated Press*, 574 F.Supp. 854 (S.D.N.Y.1983), *aff'd without opinion*, 767 F.2d 908 (2d Cir.1985), a case in which the district court refused to dismiss an action in favor of its prosecution in Iranian courts. We find it sufficient simply to

observe that the United States' present relations with Turkey are a far cry from those with Iran in the aftermath of the Iranian hostage crisis,[9] and the record provides no basis for us to suspect, much less take judicial notice of, an American woman's patent inability to secure basic justice in the Turkish courts. We cannot say, therefore, that the district court erred in refusing to find Turkey inadequate on this basis.

We therefore conclude that, while Sheraton International did not carry its affirmative burden of showing that Turkey is an adequate alternative forum, the Merciers have failed to demonstrate that under no circumstances could Turkey be an adequate forum. At a minimum, therefore, remand is warranted so that the district court may conduct additional factual inquiry, and perhaps—should the district court conclude it is appropriate—fashion a conditional dismissal that will ensure the Merciers' ability to prosecute their claim. However, before announcing such a disposition we must consider the Merciers' additional contention that, even should Turkey be an adequate alternative forum, a proper balancing of the private and public interests at stake compels retention of the case in Massachusetts. Should this be the case, dismissal would be improper, even if Turkey should prove to be an adequate alternative. We turn now to this issue.

### C. The Private and Public Interest Factors Balancing

#### 1. *Private Interest Factors*

Sheraton International argued before the district court that an analysis of the relevant private interest factors reveals that Turkey is a more convenient forum for litigating this action. In advancing that claim, Sheraton International relied principally on the fact that Deliveli and the principals of Sheraton International's "owning company" are in Turkey, and not amenable to compulsory process that would ensure that their testimony is available. The dis-

**9.** We note, for example, that Turkey is a member of the North Atlantic Treaty Organization and that Turkey was a significant United States ally in the recent hostilities with Iraq.

trict court disagreed. It found that Sheraton had failed to establish that these witnesses would be unwilling to come to the United States or to provide depositions on a voluntary basis. It also found that the translation and travel expenses Sheraton International faces if the case goes forward in Massachusetts are roughly equal to those that the Merciers face if the case proceeds in Turkey. The district court then concluded that this general equipoise, combined with the presumption favoring a plaintiff's choice of forum, dictated that the private interest factors weighed in favor of retaining jurisdiction.

Sheraton International, while disagreeing with the district court's weighing of the private interest factors, concedes on appeal that the district court's weighing of these factors was not so erroneous as to constitute an abuse of discretion. Curiously, however, the Merciers contend that while the district court's conclusion was correct, its argument was flawed. Specifically, the Merciers contend that the record below establishes that numerous witnesses reside in the United States, making this forum substantially more convenient, regardless of the presumption favoring a plaintiff's selection.

■■■■ We do not believe that the district court failed to take proper account of United States witnesses, as the Merciers suggest. While the Merciers have provided a long list of witnesses who appear to have been party to one or two negotiating sessions, none appears to have been as central to the negotiations as Deliveli. Indeed, it appears that the principal witnesses on plaintiffs' side will be the Merciers themselves.[10] Given this, we think it within the district court's discretion to have concluded that the burdens of arranging for witness attendance are likely to be about equal. We therefore accept that finding. In turn, we accept the district court's conclusion that the private interest factors weigh in favor of retaining jurisdiction, primarily on the strength of the substantial deference due a domestic plaintiff's choice of forum.

**10.** But see note 11, *infra.*

### 2. *Public Interest Factors*

The district court concluded that the public interest factors weighed heavily in favor of dismissing the Massachusetts action with a view to having it litigated in Turkey. In reaching this conclusion the district court relied on (1) the crowded state of its own docket, (2) the minimal importance of the action to Massachusetts—and the attendant unfairness of requiring Massachusetts jurors to be pressed into service to decide the case, and (3) the difficulties that the district court would face in mastering and applying Turkish law. The Merciers challenge each element of the district court's analysis.

■■■■ Taking the last of these points first, we believe that the district court appropriately relied on the difficulties of determining and applying Turkish law as one factor counseling dismissal. *Piper Aircraft* clearly establishes that this factor is one that a district court should consider. 454 U.S. at 260, 102 S.Ct. at 268. While the Merciers are correct that this factor is not to be given dispositive weight—nor is any other single factor, *id.* at 249, 102 S.Ct. at 262—we do not read the district court as having done this. Rather, the problem of applying foreign law is one of several that the district court cites as counseling dismissal.

■■■ As to the first of the factors cited by the district court, the Merciers point out that the district court, in relying on its crowded docket as grounds for dismissal, failed to consider that the Turkish courts might be equally, or more, congested. We agree that the better practice is for the district court to make a comparative determination of where the case can most quickly be resolved, rather than simply rely on the state of its own docket. See *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Such a comparative analysis better guarantees that a grant, or a denial, of a motion to dismiss on *forum non conveniens* grounds

will, in fact, serve the norms of increased convenience and efficiency underlying the *forum non conveniens* doctrine.

Finally, the Merciers disagree with the district court's finding that this is a controversy in which Massachusetts has little interest. They argue that, given that Massachusetts is Sheraton International's headquarters and that the contracts were at least partially negotiated in the United States, Massachusetts has a substantial interest in this controversy. The district court rejected this argument, noting that it was "a mere fortuity" that Sheraton International was headquartered in Massachusetts. Opinion at 386. Given the district court's further factual findings that (1) the plaintiffs do not reside in Massachusetts, (2) the agreements were negotiated and executed in Turkey,[11] and (3) the Protocol contained a Turkish forum selection clause, the district court concluded that this was a case that had little to do with Massachusetts. Opinion at 385–86. In turn, the district court believed that pressing Massachusetts jurors into hearing the case would contravene *Gulf Oil's* admonition that " '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.' " *Id.*, (citing *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843).

■ On the present record we do not disagree with the district court's conclusion that several of these facts, e.g. the center of gravity of negotiations [12] and the Protocol's forum selection clause,[13] point toward dismissal. We believe, however, that because the district court misapprehended the appropriate legal analysis to be applied, it erred in weighing the relevance of the parties' citizenship and residence to the public interest factor analysis.

■ In undertaking its analysis, the district court compared Massachusetts' interests in this litigation to those of Turkey. Then, following the analysis suggested in *Gulf Oil*, the district court concluded that Massachusetts has little interest in the case. *Gulf Oil*, however, was a case in which the Supreme Court was enunciating the factors to be considered in choosing which of two American *states* would be the more convenient venue. In the present case, the choice facing the district court was between two *countries*—the United States and Turkey. Seen in this light, the district court erred in concluding that the Merciers' non-Massachusetts citizenship and residence favored dismissing the case. Rather, the Merciers' *United States* citizenship and residence—plus Sheraton International's similar citizenship and residence—are factors that make this a controversy local to the United States, if not necessarily to Massachusetts. *Cf. Pain v. United Technologies Corp.*, 637 F.2d 775, 797 (D.C.Cir.1980), *cert. denied*, 454 U.S.

---

**11.** As noted *supra* at 422, there is some uncertainty whether, in addition to the negotiations which indisputably occurred in Turkey, negotiations also occurred in the United States—and if they did, what the nature of the United States negotiations was. In discussing the private interest factors, the district court acknowledged the Merciers' assertion that many of its key witnesses reside in the United States. Opinion at 385. However, in discussing the public interest factors it stated that "[t]he contracts at issue were negotiated and signed in Turkey." Opinion at 386. Thus it is unclear whether the district court was aware of the Merciers' contention that negotiations occurred in the United States, and if it was, what weight it gave to these United States contacts in its interest balancing. However, upon review of the Merciers' statement of facts as put forward in their appellate brief, we conclude that even taking the Merciers' account as true, the United States negotiations were of only modest import in developing the agreements. This issue remains open, how-

ever, for further exploration on remand should the district court conclude that further inquiry is warranted. Should the district court revise its findings on the location and substance of the negotiations, it remains free to take account of such findings in rebalancing the *forum non conveniens* private and public interests. Presumably, a finding that there are important United States witnesses other than the Merciers would increase the weight with which the private interest factors favor retention of the case. See *supra* note 10 and accompanying text.

**12.** But see note 11, *supra*.

**13.** We note with respect to the forum selection clause that this court—shortly before the district court issued its opinion—held that a forum selection clause, while not dispositive, counts as one factor in weighing the *forum non conveniens* interests. *Royal Bed & Spring Co. v. Famossul Industria*, 906 F.2d 45 (1st Cir.1990).

1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *Burt v. Isthmus Development Co.,* 218 F.2d 353, 357 (5th Cir.), *cert. denied,* 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955). In turn, conducting the case in the United States would serve the substantial public interest of providing a convenient United States forum for an action in which all parties are United States citizens and residents.[14]

■ Such an analysis is also relevant to the question of juror utilization. Imposing jury duty on Massachusetts citizens—in their concomitant capacity as United States citizens—in order to decide a dispute only involving United States parties is fully consistent with the concerns that animate the *forum non conveniens* doctrine. Such a dispute is given some "local" character—local to the United States—simply by the citizenship and residence of the disputants. Resolution in United States courts thus will at least broadly serve the goal of limiting jury duty to a community with an interest in the litigation. Indeed, imposing jury duty in cases such as this differs little from imposing such duty in the not unusual diversity case in which the operative facts transpire outside the federal district in which the case is tried, and in which the primary—and perhaps exclusive—factor warranting jurisdiction is the defendant's residence within the district in which suit is brought.

We therefore conclude that, while the district court was correct in evaluating certain facts related to the public interest factors, it erred with respect to others. Those errors require that the public interest factors be reevaluated so that they may be rebalanced against the private interest factors that counseled retention of the case. Since the district court is most familiar with the particular facts, and since an evaluation of at least one factor—court congestion—requires further factual development, we believe that the rebalancing should be undertaken in the first instance by the district court.

III. *Conclusion*

We believe the district court erred in concluding, on the present record, that Turkey is an adequate alternative forum. A proper determination of the answer to that question requires further inquiry by the district court and, if Turkey is found not to be an adequate alternative forum, further inquiry is required to determine whether Turkey can be rendered adequate through the fashioning of a conditional dismissal. In the event that the district court concludes on remand that Turkey is adequate, or can be rendered so through a conditional dismissal, it will also be necessary for the district court to rebalance the public and private interest factors to determine if those factors, analyzed under the appropriate legal framework, warrant dismissal.

For the foregoing reasons, the judgment of the district court is vacated and the case is remanded to the district court for further consideration consistent with this opinion.[15]

---

14. For present purposes, we need not address the proper outcome in a case in which one (or more than one) of the parties, though possessing United States citizenship, is not a United States resident. See *Pain,* 637 F.2d at 797, 799.

15. We see no reason that the judge who first decided this case should not preside on remand.