**NINIGRET DEVELOPMENT CORP., Plaintiff,**

v.

**NARRAGANSETT INDIAN WETUO-MUCK HOUSING AUTHORITY; and Building Teams Development, Inc., Defendants.**

**C.A. No. 98–106L.**

United States District Court, D. Rhode Island.

Jan. 7, 1999.

Michael L. Schein, Providence, RI, for plaintiff.

John F. Killoy, Wakefield, RI, for defendants.

### DECISION AND ORDER

LAGUEUX, Chief Judge.

Ninigret Development Corporation ("plaintiff") is a Rhode Island corporation in the construction business. It has filed a nine-count Complaint against the Narragansett Indian Wetuomuck Housing Authority ("NIWHA"), an agency of the Narragansett Indian Tribe, and Building Development Teams, Inc. after a protracted dispute over the construction of three projects—the Narragansett Indian Wetuomuck Community Village, the Home Improvement Program and the Four Winds Community Center. In brief, plaintiff alleges that NIWHA hired it to build on Tribe-owned land outside the Tribe's reservation. Then, it ordered plaintiff to stop construction, refused to make further payments, and used the Tribal Council, the governing body of the Tribe, to stonewall the resolution of plaintiff's claims.

NIWHA, an agency of the Narragansett Indian Tribe, a federally recognized sovereign nation, has moved to dismiss the Complaint. Building Development Teams, a Connecticut corporation hired as construction manager, never filed an answer, and it was defaulted on July 6, 1998.

■ An Indian tribe is not a normal litigant. As a sovereign that predates the United States, the tribe must receive comity or respect similar to that enjoyed by a foreign nation. The Narragansett Tribe has the power to design its own system for resolving disputes, and it enjoys sovereign immunity except where that immunity is waived. NIWHA moves to dismiss the Complaint based on several arguments, including lack of jurisdiction and the existence of an arbitration and forum selection clause. Those arguments defeat seven of plaintiff's claims, and the remaining two are suited for resolution in state, not federal, court. If the Tribe has been "arbitrary and self-serving" as plaintiff alleges, then this case may caution others against relying on NIWHA or the Tribal Council in the future. However, the Tribe's sovereignty—whether used fairly or not—precludes this Court from intervening.

As discussed below, NIWHA's motion to dismiss is granted as to all counts. Seven counts are within the exclusive jurisdiction of the Narragansett Tribal Council. Two should be heard, if at all, in state court.

## I. *Facts*

NIWHA was established in October 1985 by the Narragansett Tribal Council, and the federal government recognizes it as an "Indian Housing Authority." By creating the authority, the Tribe made itself eligible for federal housing money in the same fashion as state or local governments. The Tribal Council's ordinance creating NIWHA included a paragraph that gave the Authority the power to sue or be sued:

> The Council hereby gives its irrevocable consent to allowing the Authority to sue or be sued in its corporate name, upon any contract, claim or· obligation arising gout (sic) of its activities under this ordinance and hereby authorities (sic) the Authority to decree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority.

HA—195, An Ordinance To Establish The Narragansett Indian Wetuomuck Housing Authority, at Article V, ¶ 2.

NIWHA undertook three projects that are at issue in this case: the Narragansett Indian Wetuomuck Community Village, the Home Improvement Program and the Four Winds Community Center.

### A. *The Narragansett Tribe's Justice System*

The Narragansett Indian Tribe does not have a standing court system patterned on the federal system such as those created by larger or wealthier tribes. The Mashantucket Pequot Tribe in Connecticut employs full-time judges, and tribes in the West are sophisticated enough to even have joint appellate courts such as the Northern Plains Intertribal Court of Appeals, *see Strate v. A–1 Contractors*, 520 U.S. 438, 444, 117 S.Ct. 1404, 1405, 137 L.Ed.2d 661 (1997). It is plaintiff's uncontested assertion that the Narragansett Tribe has no permanent Tribal Court; rather the Tribal Council sits as the Tribal Court when necessary. Therefore, for all intents and purposes, the membership of the Council and Court is identical.

### B. *The Narragansett Indian Wetuomuck Community Village*

In March 1996, NIWHA requested bids from contractors to build modular homes on Tribe-owned property in Charlestown, Rhode Island. This land is privately held and is not part of the Narragansett settlement lands (reservation) or Indian Country. *See Narragansett Indian Tribe v. Narragansett Electric Co.*, 89 F.3d 908, 921–22 (1st Cir.1996).

In May 1996, plaintiff, Building Team Development, and NIWHA entered into a contract for site work and the erection of 35 homes (the "Village Contract"). Building Team Development was to be the construction manager, and plaintiff was to be the main subcontractor. The Narragansett Indian Wetuomuck Community Village (the "Village project") was to be funded by federal money, drawn from the United States Department of Housing and Urban Development, the Indian Health Service and the Bureau of Indian Affairs.

The Village Contract included an arbitration and forum selection clause in Article 14, which provided in relevant part:

> § 14.1 All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be first presented to the Tribal Council for resolution and in the event of non-resolution, then to the Tribal Court, which will appoint an Arbitration Board.

> § 14.3 The award rendered by the Council or Arbitration Board appointed by the Tribal Court shall be final. Upon exhaustion of final remedy in Tribal Court leading to non-resolution and as a civil option, the Parties may, with written agreement from both, institute a Civil Action in Federal District Court.

The parties signed that contract on May 22, 1996.

Plaintiff received $109,000 from NIWHA as a mobilization fee, and it worked on the site through the summer of 1996. About June 11, 1996, the parties began to disagree. The exact course of events is in dispute, but conflicts arose over pricing, the scope of the contract, and the technical requirements of

the construction specifications. Plaintiff received additional payments of $78,213.40 and $44,294.40, but the project ground to a halt by September 1996. Plaintiff submitted further claims to the Tribal Council but it has failed to resolve the matter. Frustrated by these events, plaintiff has sought relief in this Court.

Plaintiff's allegations in seven counts relate to the Village project. It alleges breach of contract against both defendants (Counts I and II); fraud against NIWHA (Counts III and IV); breach of the implied covenant of good faith and fair dealing against both defendants (Count V); conspiracy against both defendants (Count VI); and conversion against NIWHA (Count VII).

### C. The Home Improvement Project

The Home Improvement Project (the "HIP project") was a Bureau of Indian Affairs program that provided funds for the renovation of homes of tribe members. In April 1997, plaintiff was the low bidder on a bid request by NIWHA on the HIP project. Plaintiff never received a contract and never began work on the project. Plaintiff alleges that it was "rightfully" awarded the HIP project and suffered damages because it was not allowed to proceed with the work.

Plaintiff alleges that NIWHA was guilty of fraud in this matter (Count VIII).

### D. The Four Winds Community Center

In November 1996, NIWHA wanted to build a community center. Plaintiff alleges that it entered into a written contract with NIWHA to construct the Four Winds Community Center. Plaintiff has not provided a copy of that contract, although it attached to the Complaint a November 22, 1996 letter from Tamara Calhoun, Executive Director of NIWHA, that reads:

> The Narragansett Indian Wetuomuck Housing Authority intends to award Ninigret Development Corporation a Contract for the completion of the Four Winds Community Center, located on Rte 2 in Charlestion (sic), Rhode Island.
> The Scope of Work shall include Site, General Construction, Structural, Mechanical,

Plumbing, Electrical, Heating Ventilation and Air Conditioning, as described and authorized by the Narragansett Indian Wetuomuck Housing Authority, and their Architect's and Engineer's Construction Documents.

> An initial payment of Thirty Five Thousand Dollars ($35,000) will be forwarded to Ninigret Development Corporation for mobilization of equipment and manpower to secure the Site, to create a safe and orderly use of the Site by the Owner. The initial payment shall be applied to the first Requisition of Payment as a credit to the Owner once the entire project is defined in detail.

NIWHA paid plaintiff the $35,000 mentioned in the letter. Then, plaintiff alleges, without specifics, that NIWHA violated the contract by ordering plaintiff to stop work.

Plaintiff makes a claim for breach of contract against NIWHA on these allegations (Count IX).

### II. Standard for a Motion to Dismiss

NIWHA moved to dismiss under Fed.R.Civ.P. 12(b)(1). However, its arguments on Counts I to VII include the claim that a forum selection clause is applicable, and that is a claim founded on Rule 12(b)(6). See Lambert v. Kysar, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993). Although defendant invoked only Rule 12(b)(1) in its papers, this Court is not bound by the label employed. See id. The Court will consider the motion to dismiss as invoking Rule 12(b)(6) as well as 12(b)(1). When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first. See Northeast Erectors Association of the BTEA v. Secretary of Labor, 62 F.3d 37, 39 (1st Cir.1995). Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res judicata effect. See id.

Therefore, this Court will first examine the jurisdiction issue under Rule 12(b)(1), then the applicability of the forum selection and arbitration clause under Rule 12(b)(6). In ruling on any motion to dismiss, the Court

construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(1) is appropriate where plaintiff does not carry the burden of proving subject matter jurisdiction. *See Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir.1996). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### III. *Subject Matter Jurisdiction*

Before arguing any specific points of Indian law, NIWHA contends that this Court lacks subject matter jurisdiction. In fact, defendant is correct that this Court lacks diversity jurisdiction as claimed by plaintiff in the Complaint. However, this Court does have federal question jurisdiction, at a minimum, to decide the power of an Indian tribunal under an arbitration and forum selection clause that designates said tribunal as the arbitor. Because this Court holds that the Village Contract entrusts exclusive jurisdiction on the matters raised by Counts I to VII to the Narragansett Tribal Council (*see* Section IV below), it is unnecessary to decide whether federal subject matter jurisdiction would have extended to deciding plaintiff's claims on the merits. Additionally, this Court declines to utilize the doctrine of supplemental jurisdiction to retain Counts VIII and IX for decision in this forum.

### A. *Diversity Jurisdiction*

This Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a) because there is no complete diversity among the parties. In short, a federal court can never have diversity jurisdiction where a citizen of Rhode Island sues an Indian tribe located in Rhode Island.

▪ Plaintiff is a Rhode Island citizen. It is a Rhode Island corporation with its principal place of business in Rhode Island. Even if the corporation lapsed, as NIWHA alleges, the corporation's principal, Tommy Reels, is a Rhode Island citizen.

▪ NIWHA is either a Rhode Island citizen or not a citizen of any state. NIWHA is an agency of a federally-recognized, sovereign Indian tribe located in Rhode Island. A tribe is not a citizen of a foreign country. *See Oneida Indian Nation of New York v. Oneida County,* 464 F.2d 916, 923 (2d Cir. 1972) (citing *Cherokee Nation v. Georgia,* 30 U.S. 1, 17–18, 5 Pet. 1, 8 L.Ed. 25 (1831)), *rev'd on other grounds* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

Some courts have held that an Indian tribe is not a citizen of any state and may never be sued in federal court under diversity jurisdiction. *See Romanella v. Hayward,* 114 F.3d 15, 16 (2d Cir.1997) (cited by the First Circuit in *Akins v. Penobscot Nation,* 130 F.3d 482, 485 (1st Cir.1997)). Perhaps the Narragansett Tribe could be considered a citizen of Rhode Island for diversity jurisdiction under the Rhode Island Indian Claims Settlement Act, 25 U.S.C. § 1708. *See Akins,* 130 F.3d at 485 (noting that the Penobscot Tribe of Maine is subject to jurisdiction under a similar, although much-more-explicit settlement provision, 25 U.S.C. § 1725(d)(1)). But at best, that would make the Tribe a citizen of Rhode Island. *Accord id.* at 483 (Alabama citizen suing Maine tribe). The one certainty is that the Tribe is not a citizen of a state *other than* Rhode Island, and, therefore, there is no diversity in this case.

To emphasize the point, this Court notes that jurisdiction is not a requirement that parties can waive. *See Wells Real Estate Inc. v. Greater Lowell Board of Realtors,* 850 F.2d 803, 813 (1st Cir.1988) (citing *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 & n. 4, 106 S.Ct. 1326, 1331 & n. 4, 89 L.Ed.2d 501 (1986)). Therefore, a federal court could never hear a state-law contract dispute between a Rhode Island citizen and a Rhode Island Indian tribe, even if both parties agreed to file a civil action in federal court. The Village Contract included a provision that called for this type of voluntary handling of the case by a federal district

court. That could never have been an option in this case.

## B. *Federal Question Jurisdiction*

Plaintiff did not allege federal question jurisdiction in the Complaint, but it subsequently argued that it would amend and rely on the federal question inherent in defining the power of a tribal court. Counts I to VII arise from the Village Contract, and plaintiff argues that the issue in this case is whether the Tribal Court has jurisdiction based on the wording of the arbitration and forum selection clause. Plaintiff keeps harping that there is no Tribal Court, but it is clear that the Council acts as the Tribal Court or appoints a smaller group from its membership, to act as the Tribal Court when it deems that appropriate.

The Supreme Court has ruled that "in order to invoke a federal district court's jurisdiction under section 1331, it was not essential that the petitioners base their claim on a federal statute or provision of the Constitution." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 850, 105 S.Ct. 2447, 2451, 85 L.Ed.2d 818 (1985). The *National Farmers* Court found a federal question where the issue was whether "an Indian Tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court." *Id.* at 852, 105 S.Ct. at 2452.

■ In this case, the question is whether an arbitration and forum selection clause in a contract for work to be done outside the Indian reservation requires a non-Indian litigant to submit to the civil jurisdiction of a tribal court. Plaintiff argues that even if some tribes might have that power, the Narragansett Tribe should not because the Tribe lacks a legitimate tribal court.

Thus, this Court concludes that it has federal question jurisdiction at least as to that issue raised by Counts I to VII.

## C. *Supplemental Jurisdiction*

■ Counts VIII and IX do not arise from the Village Contract. They are state law claims respectively for fraud and breach of contract, and this Court could consider them only under the supplemental jurisdiction doctrine. The relevant statute states that:

> "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy."

28 U.S.C. § 1367(a). This Court has power to hear both state and federal claims if they would ordinarily be expected to be all tried in one judicial proceeding. *See Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 563–64 (1st Cir.1997); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 190 (1st Cir.1996). In particular, "the state and federal claims must derive from a common nucleus of operative fact." *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir.1995).

■ However, the exercise of supplemental jurisdiction is discretionary. *See Penobscot*, 112 F.3d at 564; *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir.1996). The district court should "take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Penobscot*, 112 F.3d at 564. The statute explicitly states that this Court may decline to exercise its discretion if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Penobscot*, 112 F.3d at 564. Because this Court dismisses Counts I to VII at this early juncture (*see* Section IV below), it declines to exercise supplemental jurisdiction over Counts VIII and IX.

This Court notes that comity, judicial economy, convenience, and fairness would all be served by a tribal or state court hearing these claims. Recent Supreme Court decisions give a Rhode Island state court as much jurisdiction over NIWHA and the Narragansett Tribe as this Court. In a case decided after briefs were filed in this case, the Supreme Court ruled that:

> [t]ribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and

whether they were made on or off a reservation.

*Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 1705, 140 L.Ed.2d 981 (1998).

■■■■ This tribal sovereign immunity is a matter of federal law. *See id.; Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Congress can alter its limits, *see Kiowa Tribe,* 118 S.Ct. at 1705, and tribes can waive it if the waiver is "unequivocally expressed," *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677.

■■■■ The *Kiowa Tribe* Court overturned an Oklahoma Court of Appeals ruling that held Indian tribes subject to suit in state court for breaches of contract involving off-reservation commercial conduct. *See Kiowa Tribe,* 118 S.Ct. at 1702. The Supreme Court held that sovereign immunity barred state court jurisdiction. However, where sovereign immunity has been waived, there would be no bar to a Rhode Island court hearing fraud or breach of contract claims against the Narragansett Tribe. Plaintiff claims such a waiver occurred. NIWHA claims that it did not. A Rhode Island Superior Court judge can determine that issue on its merits.

Therefore, the motion to dismiss is granted as to Counts VIII and IX under Fed.R.Civ.P. 12(b)(1).

## IV. *The Arbitration and Forum Selection Clause*

■■■■ Counts I to VII arise from the Village project. In the Village Contract, the parties agreed to forum selection and arbitration:

§ 14.1 All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be first presented to the Tribal Council for resolution and in the event of non-resolution, then to the Tribal Court, which will appoint an Arbitration Board.

§ 14.3 The award rendered by the Council or Arbitration Board appointed by the Tribal Court shall be final. Upon exhaus-

tion of final remedy in Tribal Court leading to non-resolution and as a civil option, the Parties may, with written agreement from both, institute a Civil Action in Federal District Court.

These paragraphs are repeated here in full because they are absolutely clear. The parties agreed that "all claims, disputes and other matters ... arising out of or relating to this Agreement" would be decided by the Tribal Council or an arbitration board. Any award "shall be final." As noted above, the sentence about jointly agreeing to a civil action in this Court was ineffective because this Court lacks jurisdiction of the matter.

■■■■ Federal courts generally enforce both arbitration agreements, *see Prima Paint Corp. v. Flood & Conklin Manufacturing Co.* 388 U.S. 395, 403–04 n. 12, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (arbitration clauses are as enforceable as other contract clauses), and forum selection clauses, *see M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (forum clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). Plaintiff does not dispute the general rule, but it argues that this arbitration and forum selection clause is not enforceable because inclusion of the clause was the result of fraud. Specifically, plaintiff argues that it was fraudulently led to believe that:

in the event of a dispute, the Narragansett Indian Tribe had certain procedures that Plaintiff could follow in order to protect its rights. Such procedures included presentation of its dispute to a Tribal court. Plaintiff later found out, when the issues which are the subject of this suit arose, that the Narragansett Tribe does not have a Tribal court at all and further there is no entity separate from the Tribal Council known as the Tribal court.

(Pl.'s Mem. Of Law in Supp. of its Objection to D.'s Mot. To Dismiss at 2.) Plaintiff does not allege that NIWHA or its agents described a fictional tribal judicial procedure. Nor does plaintiff allege that no Tribal Court has ever convened. It argues that the language of the Village Contract is fraudulent

because it implies the existence of an independent Tribal Court or, rephrasing the argument, implies a separation of powers between the Tribal Council and the Tribal Court. Plaintiff's argument fails.

### A. *Tribal Courts Need Not Mimic Federal Courts*

 An Indian tribe is a sovereign, and it need not follow the American blueprint for a court system. Specifically, it does not need to adopt the separation of powers doctrine that rests as the bedrock of the federal system. The Supreme Court has been clear that "[n]onjudicial tribal institutions have also been recognized as competent law-applying bodies." *See Santa Clara Pueblo,* 436 U.S. at 66, 98 S.Ct. at 1681. This is part of the federal government's longstanding policy of encouraging tribal self-government. *See Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987) (noting policy). Therefore, an American Indian court system that is different from the American federal model cannot cause avoidance of either an arbitration or forum selection agreement as unreasonable. Similarly, plaintiff had no right to assume that the Narragansett Tribe's system for resolving disputes would mimic the federal court system, especially where the principal of plaintiff was a member of the Tribe himself. In short, there was no fraud which led to the execution of the Village Contract by plaintiff.

### B. *No Evidence Exists Of Tribal Court Bias*

 Even if the inclusion of the forum selection clause in the Village Contract was not induced by fraud, this Court will not offer comity and enforce such a clause where the chosen foreign court is biased or corrupt. *See* Gary B. Born, *International Civil Litigation in the United States Courts* 412 (3d ed.1996) (collecting cases on bias and corruption). *Cf. Mercier v. Sheraton Int'l, Inc.,* 935 F.2d 419, 427 (1st Cir.1991) [*hereinafter Mercier II* ] (analyzing bias in Turkish courts in the context of forum non conveniens). A plaintiff's conclusory claims of injustice in the foreign forum where it voluntarily agreed to litigate claims will not control the selection of a judicial forum. *See Mercier v. Sheraton*

*Int'l, Inc.,* 981 F.2d 1345, 1351 (1st Cir.1992) [*hereinafter Mercier III* ]. The mere fact that an Indian court will hear an Indian case does not make that court biased. *See, e.g., Hodes v. S.N.C. Achille Lauro,* 858 F.2d 905, 916 (3d Cir.1988) (Italian court not biased to hear case dealing with an Italian vessel), *rev'd on other grounds* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). This has been true even where one party is a member of the dominant political elite in the foreign forum. *See, e.g., Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 287–88 n. 2 (5th Cir. 1989). The majority of recent cases that found bias dealt with the revolutionary government of Iran in the 1980s. *See* Born, *supra,* at 412. *See also Mercier II,* 935 F.2d at 427 (noting that Turkey differed from revolutionary Iran).

 Plaintiff bears the burden of proving that the Narragansett Tribal Council would be profoundly biased against its claims. See *Mercier II,* 935 F.2d at 427; *Mercier III,* 981 F.2d at 1351. The lack of separation of powers is not proof of bias. Also, the fact that a tribal agency is a party to the lawsuit is not proof of bias. Plaintiff offered evidence of delays in the resolution of this case by the Council, but no evidence that the Narragansett Tribal authorities are biased against non-Indians or other parties. The Narragansett Tribe's dispute resolution system exists as the contract explained, and plaintiff, thus, had no basis for assuming that the Tribal Council would establish a separate Tribal Court or would operate like a federal district court. Therefore, this Court concludes that there is no bias in this case sufficient to void the arbitration and forum selection clause.

Consequently, the forum selection clause is valid and enforceable. The parties must resolve their dispute in the forum they have chosen. The motion to dismiss is granted as to Counts I to VII under Fed.R.Civ.P. 12(b)(6).

### CONCLUSION

This Court recognizes plaintiff's hardships. The Tribe appears to have used its procedures to stonewall plaintiff's claims and delay

resolution thereof. However, plaintiff contracted to settle its contract disputes utilizing the Narragansett Tribe's justice system. Now, plaintiff must live with its bargain, just as the Tribe will have to live with its reputation when it deals with outside contractors in the future. The proper forum for this case is clear. Plaintiff and NIWHA must seek a resolution from the Tribal Council or from a duly appointed arbitration board.

For the preceding reasons, NIWHA's motion to dismiss all counts hereby is granted. Judgment shall enter to that effect in favor of defendant, Narragansett Indian Wetuomuck Housing Authority. Plaintiff may file a motion to have a default judgment entered against defendant, Building Development Teams, Inc. by submitting a proof of claim in support thereof.

It is so Ordered.