UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1006

RALPH M. NOWAK, ADMINISTRATOR OF THE
ESTATE OF SALLY ANN NOWAK, ET AL.,

Plaintiffs - Appellees,

v.

TAK HOW INVESTMENTS, LTD.,
d/b/a HOLIDAY INN CROWNE PLAZA HARBOUR VIEW,

Defendant - Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge] 



Before

Stahl, Circuit Judge, 

Coffin, Senior Circuit Judge, 

and Cummings,* Circuit Judge. 



Alan B. Rubenstein, with whom Robert B. Foster and 
Rackemann, Sawyer & Brewster were on brief for appellant. 
Edward Fegreus for appellees. 



August 22, 1996


 

* Of the Seventh Circuit, sitting by designation.

CUMMINGS, Circuit Judge.1 A Massachusetts resident who CUMMINGS, Circuit Judge. 

accompanied her husband on a business trip to Hong Kong drowned

in their hotel's swimming pool. Plaintiffs later brought this

wrongful death diversity action against the Hong Kong corporation

that owns the hotel -- a corporation that has no place of

business outside of Hong Kong. Defendant moved for dismissal,

arguing that a Massachusetts court could not exercise personal

jurisdiction consistently with due process and, alternatively,

that the case should be dismissed on the grounds of forum non 

conveniens. The district court denied both motions, and we now 

affirm.

I.

Tak How is a Hong Kong corporation with its only place

of business in Hong Kong. Its sole asset is the Holiday Inn

Crowne Plaza Harbour View in Hong Kong ("Holiday Inn"), where the

accident in this case took place. Tak How has no assets,

shareholders, or employees in Massachusetts. Sally Ann Nowak

("Mrs. Nowak") was at all relevant times married to plaintiff

Ralph Nowak ("Mr. Nowak") and was the mother of their two

children (collectively, the plaintiffs are "the Nowaks"). The

Nowaks lived in Marblehead, Massachusetts, and Mr. Nowak was

 

1 Section II.A. was authored by Judge Coffin. This opinion was
circulated to the active judges of the First Circuit before
issuance. This informal circulation, however, is without
prejudice to a petition for rehearing or suggestion of en banc
reconsideration on any issue in the case. NLRB v. Hospital San 
Rafael, Inc., 42 F.3d 45, 51 n.1 (1st Cir. 1994). 

-2-

employed by Kiddie Products, Inc., which has its place of

business in Avon, Massachusetts. Kiddie Products does extensive

business in Hong Kong. As a Preliminary Design Manager in the

Marketing Department, Mr. Nowak customarily made two business

trips to Hong Kong each year, accompanied by his wife on one of

those trips.

Kiddie Products employees had made trips to Hong Kong

since at least 1982, but the company's relationship with Tak How

and the Holiday Inn began only in 1992. John Colantuone, a vice-

president, was one such employee who had travelled to Hong Kong

since 1982 and had stayed at various other hotels. Colantuone

was acquainted with the Holiday Inn through advertisements on

Hong Kong radio in 1983 or 1984, but only decided to stay there

in 1992 after becoming dissatisfied with the rates at other

hotels. On his first visit, Colantuone met with the Holiday

Inn's sales manager to negotiate a corporate discount for Kiddie

Products employees. Holiday Inn agreed to the discount and wrote

a letter confirming the arrangement based on a minimum number of

room nights per year. Marie Burke, Colantuone's administrative

assistant, made all hotel reservations for the company's

employees. Although Kiddie Products regularly compared rates at

other hotels, Burke was told to book all reservations at the

Holiday Inn until instructed otherwise. Since 1992, Kiddie

Products employees have stayed exclusively at the Holiday Inn.

In June 1993, the Holiday Inn telecopied Colantuone a

message announcing new corporate rates and other promotional

-3-

materials. Burke requested additional information, and the hotel

promptly responded. In July 1993, after a series of exchanges by

telecopier, Burke sent a reservation request to the Holiday Inn

for several employees for September and October 1993. One of the

reservations was for Mr. and Mrs. Nowak to arrive on September

16. On September 18, while the Nowaks were registered guests at

the hotel, Mrs. Nowak drowned in the hotel swimming pool. The

specific facts surrounding her death are not relevant here. It

is uncontested that in 1992 and 1993, prior to Mrs. Nowak's

death, Tak How advertised the Holiday Inn in certain national and

international publications, some of which circulated in

Massachusetts. In addition, in February 1993, Tak How sent

direct mail solicitations to approximately 15,000 of its previous

guests, including previous guests residing in Massachusetts.

The Nowaks filed this wrongful death action in

Massachusetts state court in June 1994. Tak How then removed the

case to federal district court and filed two motions to dismiss -

- one for lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2) and the other for forum non conveniens. The district 

court initially denied the motion to dismiss for forum non 

conveniens, and then, after allowing time for jurisdictional 

discovery, issued a memorandum and order denying the Rule

12(b)(2) motion. Nowak v. Tak How Inv. Ltd., 899 F. Supp. 25 (D. 

Mass. 1995). The district court granted Tak How's motion for

certification of the jurisdictional issue, but this Court denied

Tak How's request for a stay of the district court proceeding

-4-

pending appeal. Nonetheless, believing that a resulting judgment

would not be enforceable in Hong Kong, Tak How did not answer the

Nowaks' complaint. Accordingly, the district court entered a

default judgment against Tak How for $3,128,168.33. Tak How

appeals the denial of its Rule 12(b)(2) motion and its motion to

dismiss the case for forum non conveniens. 

II.

We first review the denial of Tak How's motion to

dismiss for lack of personal jurisdiction. The district court

employed a prima facie standard in making its determination

rather than adjudicating the jurisdictional facts. See Foster- 

Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-147 (1st 

Cir. 1995). Both the court's decision to use the prima facie

standard and its conclusion under that standard are reviewed de 

novo. Id. at 147. To begin, we find no error in the district 

court's choice of the prima facie standard. A full-blown

evidentiary hearing was not necessary in this case because the

facts were, in all essential respects, undisputed. In such

circumstances, the prima facie standard is both appropriate and

preferred. Id. at 145; Boit v. Gar-Tec Prods., Inc., 967 F.2d 

671, 675-676 (1st Cir. 1992).

The next question is whether the district court reached

the proper result. In diversity cases such as this, the district

court's personal jurisdiction over a nonresident defendant is

governed by the forum state's long-arm statute. Sawtelle v. 

-5-

Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Under the 

Massachusetts statute,

[a] court may exercise personal
jurisdiction over a person, who acts
directly or by an agent, as to a cause of
action in law or equity arising from the
person's . . . transacting any business
in this Commonwealth.

Mass. Gen. Laws Ann. ch. 223A, 3(a) (1985). The statute

imposes constraints on personal jurisdiction that go beyond those

imposed by the Constitution. Gray v. O'Brien, 777 F.2d 864, 866 

(1st Cir. 1985). We must therefore find sufficient contacts

between the defendant and the forum state to satisfy both the

Massachusetts long-arm statute and the Constitution. Sawtelle, 

70 F.3d at 1387.

To satisfy the requirements of the long-arm statute,

Section 3(a), the defendant must have transacted business in

Massachusetts and the plaintiffs' claim must have arisen from the

transaction of business by the defendant. Tatro v. Manor Care, 

Inc., 625 N.E.2d 549, 551 (Mass. 1994). In Tatro, a 

Massachusetts plaintiff sued a California hotel for injuries

sustained in California. The Court concluded that the hotel's

solicitation of business from Massachusetts residents satisfied

the "transacting any business" requirement of Section 3(a), id. 

at 551-552, and that the "arising from" requirement was satisfied

where, but for the hotel's solicitations and acceptance of

reservations, the plaintiff would not have been injured in

California. Id. at 554. The factual scenario in the present 

case is analogous in all essential respects, and we therefore

-6-

have little difficulty concluding that sufficient contacts exist

to satisfy Section 3(a)'s requirements.

Turning to the constitutional restraints, this Court

follows a tripartite analysis for determining the existence of

specific personal jurisdiction (plaintiffs do not allege general

personal jurisdiction):

First, the claim underlying the
litigation must directly arise out of, or
relate to, the defendant's forum-state
activities. Second, the defendant's
forum-state contacts must represent a
purposeful availment of the privilege of
conducting activities in the forum state,
thereby invoking the benefits and
protections of that state's laws and
making the defendant's involuntary
presence before the state's court
foreseeable. Third, the exercise of
jurisdiction must, in light of the
Gestalt factors, be reasonable.

Pritzker v. Yari, 42 F.3d 53, 60-61 (1st Cir. 1994) (quoting 

United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 

1089 (1st Cir. 1992)), cert. denied, 115 S. Ct. 1959. 

A. Relatedness

What this Court calls the "relatedness" test is one

aspect of demonstrating minimum contacts pursuant to

International Shoe Co. v. Washington, 326 U.S. 310. The other 

aspect, discussed below, focuses on the deliberateness of the

defendant's contacts, or purposeful availment. Tak How's

principal argument on appeal is that relatedness requires a

proximate cause relationship between its contacts with

Massachusetts and the Nowaks' cause of action. 

-7-

In arguing for a proximate cause relatedness test, Tak

How relies on a series of First Circuit cases beginning with

Marino v. Hyatt Corp., 793 F.2d 427 (1st Cir. 1986). See Crocker 

v. Hilton Int'l Barbados, Ltd., 976 F.2d 797 (1st Cir. 1992); 

Fournier v. Best Western Treasure Island Resort, 962 F.2d 126 

(1st Cir. 1992); Pizarro v. Hoteles Concorde Int'l, C.A., 907 

F.2d 1256 (1st Cir. 1990). In each of these cases, this Court

construed the language of a state long-arm statute requiring, as

does the Massachusetts statute quoted above, that the cause of

action "arise" from the forum-state contacts. Construing those

statutes, we rejected plaintiffs' arguments that the injury at

issue would not have occurred "but for" the forum-state contacts.

Instead, we held that the defendant's conduct must be the legal

or proximate cause of the injury. Pizarro, 907 F.2d at 1260. 

At least for purposes of construing the Massachusetts

long-arm statute, the Supreme Judicial Court of Massachusetts

dealt our restrictive interpretation a fatal blow in Tatro, 

supra. The Court decided that the "but for" test is more 

consistent with the language of the long-arm statute and

explicitly rejected our interpretation of the statute in the

Marino line of cases. 625 N.E.2d at 553. Personal jurisdiction 

was proper in Tatro because the California hotel had solicited 

business in Massachusetts and had agreed to provide the plaintiff

with accommodations; but for those acts, the plaintiff would not

have been injured. Id. at 554. 

-8-

Tak How contends that Tatro was not fatal to Marino and 

its progeny. It concedes, as it must, that Tatro is controlling 

insofar as it deals with the construction of the Massachusetts

long-arm statute, but insists that the relatedness discussion in

Marino had constitutional significance as well. Its position is 

not without support. In Pleasant Street, we stated that the 

Massachusetts statute's relatedness requirement "mirrors a key

constitutional requirement for the exercise of specific

jurisdiction." 960 F.2d at 1087. Then, in explaining

constitutional relatedness, we set forth proximate cause

principles derived from the Marino line of cases. See id. at 

1089.

The Nowaks, on the other hand, argue that these cases

have no constitutional significance. They find support from a

footnote in Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 

207 n.8 (1st Cir. 1994):

In our view, [the Marino line of cases] - 
- which interpret the term "arising from"
as that term is used in the long-arm
statutes of Massachusetts -- deal with
state-law issues and have no real
implication for the relatedness
requirement specifically or for
constitutional analysis generally. 

(citations omitted).

Despite the apparent conflict, these cases are arguably

reconcilable. After all, Ticketmaster did not directly reject 

Pleasant Street or the proximate cause test, but merely stated 

the evident fact that the Marino line of cases centered on 

interpretations of state law. It might follow, then, that our

-9-

discussion in Pleasant Street should govern our course here. 

Pleasant Street, however, as well as Ticketmaster, described the 

relatedness concept in only the most general way. Neither case

specifically defined the precise inquiry under the relatedness

test in this circuit. Fortunately, however, these cases, and

others, articulated certain principles that guide our inquiry. 

As an initial matter, "[w]e know . . . that the

[relatedness] requirement focuses on the nexus between the

defendant's contacts and the plaintiff's cause of action."

Ticketmaster, 26 F.3d at 206. The requirement serves two 

purposes.

First, relatedness is the divining rod
that separates specific jurisdiction
cases from general jurisdiction cases.
Second, it ensures that the element of
causation remains in the forefront of the
due process investigation.

Id. Most courts share this emphasis on causation, but differ 

over the proper causative threshold. Generally, courts have

gravitated toward one of two familiar tort concepts -- "but for"

or "proximate cause."

The Ninth Circuit is the most forceful defender of the

"but for" test. In Shute v. Carnival Cruise Lines,2 the court 

stated that "but for" serves the basic function of relatedness by

 

2 Shute was reversed by the Supreme Court on alternative 
grounds. 499 U.S. 585. As reflected by subsequent cases, the
Ninth Circuit still adheres to the "but for" test. See Ballard 
v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995); Terracom v. Valley 
Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995). But see Omeluk v. 
Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 271 (9th Cir. 1995) 
(questioning Shute's authority). 

-10-

"preserv[ing] the essential distinction between general and

specific jurisdiction." 897 F.2d 377, 385 (9th Cir. 1990). A

more stringent standard, the court asserted, "would represent an

unwarranted departure from the core concepts of 'fair play and

substantial justice,'" because it would preclude jurisdiction in

cases where it would be reasonable. Id. at 386. In turn, in 

those cases where "but for" might lead to an unreasonable result,

the court predicted that the third prong -- the reasonableness

inquiry -- would guard against unfairness. 

Shute and its progeny represent the only explicit 

adoption of the "but for" test. Nonetheless, cases from other

circuits suggest a similar approach. In Prejean v. Sonatrach, 

Inc., the Fifth Circuit noted:  

Logically, there is no reason why a tort
cannot grow out of a contractual contact.
In a case like this, a contractual
contact is a "but for" causative factor
for the tort since it brought the parties
within tortious "striking distance" of
one another. While the relationship
between a tort suit and a contractual
contact is certainly more tenuous than
when a tort suit arises from a tort
contact, that only goes to whether the
contact is by itself sufficient for due
process, not whether the suit arises from
the contact.

652 F.2d 1260, 1270 n.21 (5th Cir. 1981). Subsequent cases,

however, have not always followed this teaching. See Luna v. 

Compa a Paname a de Aviaci n, S.A., 851 F. Supp. 826, 832 (S.D. 

Tex. 1994) (employing a proximate cause standard); Kervin v. Red 

River Ski Area, Inc., 711 F. Supp. 1383, 1389-1390 & n.11 (E.D. 

Tex. 1989) (same).

-11-

The Sixth Circuit applies a "substantial connection"

standard. See Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 

1087, 1091 (6th Cir. 1989), cert. denied, 493 U.S. 1058; Southern 

Mach. Co. v. Mohasco Indus., Inc. 401 F.2d 374, 384 n.27 (6th 

Cir. 1968). The court's discussion in Lanier v. American Board 

of Endodontics, 843 F.2d 901, 908-911 (6th Cir. 1988), however, 

suggests that a "but for" relationship survives the due process

inquiry.

Finally, the Seventh Circuit has upheld jurisdiction

under the Illinois long-arm statute, and the Due Process Clause,

for claims that "lie in the wake of the commercial activities by

which the defendant submitted to the jurisdiction of the Illinois

courts." See Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 

1209, 1215-1216 (7th Cir. 1984) (breach of warranty); In re Oil 

Spill by Amoco Cadiz, 699 F.2d 909, 915-916 (7th Cir. 1983) 

(indemnity action), cert. denied, 464 U.S. 864. Whether this 

indeterminate standard would encompass tortious negligence

committed outside the forum is unknown. Cf. Simpson v. Quality 

Oil Co., 723 F. Supp. 382, 388 & n.4 (S.D. Ind. 1989) (suggesting 

that relatedness is limited to those contacts substantively

related to the cause of action).

On the other hand, the Second and Eighth Circuits, as

well as this one, appear to approve a proximate cause standard.

See Pleasant Street, 960 F.2d at 1089; Pearrow v. National Life & 

Accident Ins. Co., 703 F.2d 1067, 1069 (8th Cir. 1983); Gelfand 

v. Tanner Motor Tours, Ltd., 339 F.2d 317, 321-322 (2d Cir. 

-12-

1964). The courts in Pearrow and Gelfland found that, for 

purposes of the long-arm statute at issue, non-forum negligence

claims did not arise from in-forum solicitation or ticket sales.

District courts from the Third and Tenth circuits have reached

similar results. See Wims v. Beach Terrace Motor Inn, Inc., 759 

F. Supp. 264, 267-268 (E.D. Pa. 1991); Dirks v. Carnival Cruise 

Lines, 642 F. Supp. 971, 975 (D. Kan. 1986). 

This circuit, whether accurately or not, has been

recognized as the main proponent of the proximate cause standard.

We think the attraction of proximate cause is two-fold. First,

proximate or legal cause clearly distinguishes between

foreseeable and unforeseeable risks of harm. See Peckham v. 

Continental Casualty Ins. Co., 895 F.2d 830, 836 (1st Cir. 1990). 

Foreseeability is a critical component in the due process

inquiry, particularly in evaluating purposeful availment, and we

think it also informs the relatedness prong. See Pleasant 

Street, 960 F.2d at 1089. As the Supreme Court said in Burger 

King Corp. v. Rudzewicz, 

[the Due process Clause] requir[es] that
individuals have "fair warning that a
particular activity may subject [them] to
the jurisdiction of a foreign sovereign
. . . ." [T]his "fair warning"
requirement is satisfied if the defendant
has "purposefully directed" his
activities at residents of the forum, and
the litigation results from alleged
injuries that "arise out of or relate to"
those activities. 

471 U.S. 462, 472. Adherence to a proximate cause standard is

likely to enable defendants better to anticipate which conduct

-13-

might subject them to a state's jurisdiction than a more tenuous

link in the chain of causation. Certainly, jurisdiction that is

premised on a contact that is a legal cause of the injury

underlying the controversy -- i.e., that "form[s] an 'important, 

or [at least] material, element of proof' in the plaintiff's

case," Pleasant Street, 960 F.2d at 1089 (citation omitted) -- is 

presumably reasonable, assuming, of course, purposeful availment.

As our discussion suggests, and notwithstanding any

contrary implication from the footnote in Ticketmaster, we think 

the proximate cause standard better comports with the relatedness

inquiry because it so easily correlates to foreseeability, a

significant component of the jurisdictional inquiry. A "but for"

requirement, on the other hand, has in itself no limiting

principle; it literally embraces every event that hindsight can

logically identify in the causative chain. True, as the Ninth

Circuit has noted, courts can use the reasonableness prong to

keep Pandora's jar from opening too wide. But to say that the

harm that might be done by one factor can be prevented by another

is not, after all, an affirmative justification for the former.

That being said, we are persuaded that strict adherence

to a proximate cause standard in all circumstances is

unnecessarily restrictive. The concept of proximate cause is

critically important in the tort context because it defines the

scope of a defendant's liability. In contrast, the first prong

of the jurisdictional tripartite test is not as rigid: it is,

"relatively speaking, . . . a 'flexible, relaxed standard.'"

-14-

Sawtelle, 70 F.3d at 1389 (citation omitted). We see no reason 

why, in the context of a relationship between a contractual or

business association and a subsequent tort, the absence of

proximate cause per se should always render the exercise of

specific jurisdiction unconstitutional. 

When a foreign corporation directly targets residents

in an ongoing effort to further a business relationship, and

achieves its purpose, it may not necessarily be unreasonable to

subject that corporation to forum jurisdiction when the efforts

lead to a tortious result. The corporation's own conduct

increases the likelihood that a specific resident will respond

favorably. If the resident is harmed while engaged in activities

integral to the relationship the corporation sought to establish,

we think the nexus between the contacts and the cause of action

is sufficiently strong to survive the due process inquiry at

least at the relatedness stage.

This concept represents a small overlay of "but for" on

"proximate cause." In a sense it is a narrower and more specific

identification of the Seventh Circuit's formulation for

jurisdiction-worthiness of claims lying "in the wake" of

commercial activities in the forum. It may be that other kinds

of fact patterns will be found to meet the basic factor of

foreseeability, but we have no occasion here to pronounce more

broadly.

This case is illustrative of our reasoning. Through

its ongoing correspondence with Kiddie Products, Tak How knew

-15-

that Kiddie Products employees would stay at its hotel, and could

easily anticipate that they might use the pool, a featured

amenity of the hotel. The district court thoroughly described

t h i s c o n n e c t i o n .
The Hotel's solicitation of Kiddie's
business and the extensive back-and-forth
resulting in Burke's reserving a set of
rooms for Kiddie employees and their
spouses set in motion a chain of
reasonably foreseeable events resulting
in Mrs. Nowak's death. The possibility
that the solicitation would prove
successful and that one or more of the
guests staying at the Hotel as a result
would use the pool was in no sense remote
or unpredictable; in fact, the Hotel
included the pool as an attraction in its
promotional materials.

899 F. Supp. at 31. While the nexus between Tak How's

solicitation of Kiddie Products' business and Mrs. Nowak's death

does not constitute a proximate cause relationship, it does

represent a meaningful link between Tak How's contact and the

harm suffered. Given these circumstances, we think it would be

imprudent to reject jurisdiction at this early stage of the

inquiry.

By this approach, we intend to emphasize the importance

of proximate causation, but to allow a slight loosening of that

standard when circumstances dictate. We think such flexibility

is necessary in the jurisdictional inquiry: relatedness cannot

merely be reduced to one tort concept for all circumstances.

Though we are recognizing a narrow exception to the proximate

cause test, we note an additional protection for defendants'

rights: "the relatedness requirement . . . authorizes the court

-16-

to take into account the strength (or weakness) of the

plaintiff's relatedness showing in passing upon the fundamental

fairness of allowing the suit to proceed." Ticketmaster, 26 F.3d 

at 207.

We recognize it will not always be easy to apply this

flexible approach to particular circumstances, but that is a

function of the complexity of this area of the law. The

jurisdictional inquiry is often a difficult fact specific

analysis in which "[t]he greys are dominant and even among them

the shades are innumerable." Pleasant Street, 960 F.2d at 1088 

(citing Estin v. Estin, 334 U.S. 541, 545). 

-17-

B. Purposeful Availment

The next issue is whether Tak How's contacts with

Massachusetts constitute purposeful availment. The purposeful

availment requirement ensures that jurisdiction is not premised

on "random, isolated, or fortuitous" contacts with the forum

state, Sawtelle, 70 F.3d at 1391 (quoting Keeton v. Hustler 

Magazine, Inc., 465 U.S. 770, 774), but rather guarantees that 

the exercise of jurisdiction is "fair, just, or reasonable." Id. 

(quoting Rush v. Savchuk, 444 U.S. 320, 329). Our two focal 

points are voluntariness and foreseeability. Ticketmaster, 26 

F.3d at 207. The defendant's contacts with the forum state must

be voluntary -- that is, not based on the unilateral actions of

another party or a third person. Burger King, 471 U.S. at 475; 

Vencedor Mfg. Co. v. Gougler Indus., Inc., 557 F.2d 886, 891 (1st 

Cir. 1977). In addition, the defendant's contacts with the forum

state must be such that he should reasonably anticipate being

haled into court there. World-Wide Volkswagen Corp. v. Woodson, 

444 U.S. 286, 297; Escude Cruz v. Ortho Pharmaceutical Corp., 619 

F.2d 902, 905 (1st Cir. 1980).

We think that Tak How's unprompted June 1993

correspondence with Kiddie Products, which led directly to the

ill-fated Hong Kong trip in September 1993, was at least

minimally sufficient to satisfy this requirement. The June 1993

correspondence contained promotional materials from the Holiday

Inn designed to further entice Kiddie Products employees to stay

at the hotel. Even if it may be said that the materials were

-18-

sent as part of an on-going relationship between the two

companies that was originally instigated by Kiddie Products, the

continued correspondence by Tak How to Massachusetts does not

amount to the kind of unilateral action that makes the forum-

state contacts involuntary. Tak How had an obvious financial

interest in continuing business with Kiddie Products, and the

June 1993 correspondence is the best example of an unprompted

solicitation designed to facilitate that business relationship.

In order to be subject to Massachusetts' jurisdiction, a

defendant need only have one contact with the forum state, so

long as that contact is meaningful. McGee v. International Live 

Ins. Co., 355 U.S. 220, 223; Burger King, 471 U.S. at 475 n.18. 

Whether prompted or unprompted, Tak How's on-going

correspondence and relationship with Kiddie Products, designed to

bring Massachusetts residents into Hong Kong, rendered

foreseeable the possibility of being haled into a Massachusetts

court. That Tak How might have to defend itself in a

Massachusetts court is certainly foreseeable based on its direct

correspondence with Kiddie Products, but its other contacts with

Massachusetts reveal an even more substantial attempt by Tak How

to purposefully avail itself of the privilege of conducting

business activities in the state: Tak How advertised its hotel

in national and international publications that circulated in

Massachusetts; it solicited by direct mail some of its previous

guests residing in Massachusetts; and Tak How listed its hotel in

various hotel guides used at travel agencies in Massachusetts.

-19-

Exercising jurisdiction is appropriate where the defendant

purposefully derives economic benefits from its forum-state

activities. Pritzker, 42 F.3d at 61-62 (citing Burger King, 471 

U.S. at 476).

C. The Gestalt Factors

Our conclusion that minimum contacts exist in this case

does not end the inquiry. Personal jurisdiction may only be

exercised if it comports with traditional notions of "fair play

and substantial justice." International Shoe, 326 U.S. at 320. 

Out of this requirement, courts have developed a series of

factors that bear on the fairness of subjecting a nonresident to

a foreign tribunal. Burger King, 471 U.S. at 477; Pleasant 

Street, 960 F.2d at 1088. These "gestalt factors" are as 

follows:

(1) the defendant's burden of appearing,
(2) the forum state's interest in
adjudicating the dispute, (3) the
plaintiff's interest in obtaining
convenient and effective relief, (4) the
judicial system's interest in obtaining
the most effective resolution of the
controversy, and (5) the common interests
of all sovereigns in promoting
substantive social policies.

Id. (citing Burger King, 471 U.S. at 477). The purpose of the 

gestalt factors is to aid the court in achieving substantial

justice, particularly where the minimum contacts question is very

close. In such cases, the gestalt factors may tip the

constitutional balance. Ticketmaster, 26 F.3d at 209. The 

Supreme Court's decision in Asahi Metal Indus. Co. v. Superior 

-20-

Court, 480 U.S. 102, is one such example. In Asahi, the 

question of minimum contacts divided the Court, but eight of the

Justices agreed that exercising personal jurisdiction would not

comport with notions of fair play and substantial justice. This

Court has thus adopted a sliding scale approach: "[T]he weaker

the plaintiff's showing on the first two prongs (relatedness and

purposeful availment), the less a defendant need show in terms of

unreasonableness to defeat jurisdiction." Ticketmaster, 26 F.3d 

at 210. The reverse is equally true: a strong showing of

reasonableness may serve to fortify a more marginal showing of

relatedness and purposefulness. See id. (citing Donatelli v. 

National Hockey League, 893 F.2 459, 465 (1st Cir. 1990)); see 

also Sawtelle, 70 F.3d at 1396. 

1. The Burden of Appearance. It would undoubtedly be

burdensome for Tak How to defend itself in Massachusetts: Tak

How's only place of business is in Hong Kong. This Court has

recognized, however, that it is almost always inconvenient and

costly for a party to litigate in a foreign jurisdiction.

Pritzker, 42 F.3d at 64. Thus for this particular gestalt factor 

to have any significance, the defendant must demonstrate that

"exercise of jurisdiction in the present circumstances is onerous

in a special, unusual, or other constitutionally significant

way." Id. Tak How alleges nothing special or unusual about its 

situation beyond the ordinary cost and inconvenience of defending

an action so far from its place of business. Under Pritzker, 

-21-

that is not enough: it simply cannot be the case that every Hong

Kong corporation is immune from suit in Massachusetts. But see

Ticketmaster, 26 F.3d at 210 (noting the importance of 

considering the distance the defendant must travel in giving

weight to this factor in the analysis). We are also persuaded

that the burden on Tak How will be minimized by, for example, the

availability of transcripts from the Coroner's Court for use in

the Massachusetts proceeding.

We have also noted that the burden of appearance is an

important gestalt factor primarily because it allows a court to

guard against harassing litigation. Ticketmaster, 26 F.3d at 211 

(citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508)). Were 

there any indication in the record that the Nowaks brought the

present suit to harass Tak How, the burden of appearance in

Massachusetts might weigh in Tak How's favor; however, the record

does not so indicate.

2. Interest of the Forum. Although a forum state has

a significant interest in obtaining jurisdiction over a defendant

who causes tortious injury within its borders, Ticketmaster, 26 

F.3d at 211, that interest is diminished where the injury

occurred outside the forum state. Sawtelle, 70 F.3d at 1395. 

Nonetheless, our task is not to compare the interest of the two

sovereigns -- the place of the injury and forum state -- but to

determine whether the forum state has an interest. Id. While it 

is true that the injury in this case occurred in Hong Kong, it is

-22-

equally true (unlike Sawtelle) that significant events took place 

in Massachusetts giving it an interest in this litigation. Tak

How solicited business in the state. As the district court

noted, Massachusetts has a strong interest in protecting its

citizens from out-of-state solicitations for goods or services

that prove to be unsafe, and it also has an interest in providing

its citizens with a convenient forum in which to assert their

claims. Burger King, 471 U.S. at 473. Given the forum-state 

activities that took place prior to Mrs. Nowak's death, we

conclude that Massachusetts has a strong interest in exercising

jurisdiction even though the injury took place in Hong Kong.

3. The Plaintiffs' Convenience. This Court must

accord deference to the Nowaks' choice of a Massachusetts forum.

See, e.g., Foster-Miller, 46 F.3d at 151. Regardless, it is 

obvious that a Massachusetts forum is more convenient for the

Nowaks than another forum, particularly a Hong Kong forum.

Further, there exists substantial doubt that the Nowaks could

adequately resolve the dispute in Hong Kong: Hong Kong's laws

regarding contingency fees and posting of security bonds with the

court make litigation economically onerous for plaintiffs, and

the future of Hong Kong's political system is also uncertain.

4. The Administration of Justice. This factor focuses

on the judicial system's interest in obtaining the most effective

resolution of the controversy. Usually this factor is a wash,

-23-

Ticketmaster, 26 F.3d at 211; Sawtelle, 70 F.3d at 1395, but in 

one case we held that preventing piecemeal litigation might favor

one jurisdiction over another. Pritzker, 42 F.3d at 64. Tak How 

argues that a Massachusetts action would require the application

of Hong Kong law, the use of interpreters, and the transportation

of key witnesses from Hong Kong that are not subject to

compulsory process. On the other hand, the Nowaks point to

possible political instability in Hong Kong as the British Colony

prepares to revert to Chinese sovereignty. Interpreters and

transportation of witnesses would likely also be necessary in

Hong Kong. We conclude that the question of efficient

administration of justice favors a Massachusetts forum. Given

the likelihood that the Nowaks would face great obstacles in Hong

Kong due to possible political instability, as well as Hong Kong

laws on contingency fees and security bonds, efficiency concerns

require a Massachusetts forum. See United Elec. Workers v. 163 

Pleasant St. Corp., 987 F.2d 39, 46-47 (1st Cir. 1993) (finding 

that fourth gestalt factor weighed against a foreign jurisdiction

where "it is far from clear that there will be any judicial

resolution, let alone the most effective judicial resolution, of

this controversy" if the case could not proceed in

Massachusetts).

5. Pertinent Policy Arguments. The final gestalt

factor addresses the interests of the affected governments in

substantive social policies. Massachusetts has an interest in

-24-

protecting its citizens from out-of-state providers of goods and

services as well as affording its citizens a convenient forum in

which to bring their claims. These interests are best served by

the exercise of jurisdiction in Massachusetts. On the other

hand, Hong Kong has an interest in protecting visitors to promote

and preserve its tourism industry, in protecting its businesses,

and in providing all parties with a convenient forum. Only one

of Hong Kong's interests -- protecting its businesses -- might be

compromised by a Massachusetts forum, while Massachusetts'

primary interest -- protecting its citizens -- might be

compromised by a Hong Kong forum. We thus conclude that the

final Gestalt factor tips only slightly in the Nowaks' favor.

On balance, we think the gestalt factors weigh strongly

in favor of a Massachusetts forum. When considered in

combination with the Nowaks' adequate showing on the first two

prongs of the constitutional test, we think that, on the specific

facts of this case, the exercise of jurisdiction in Massachusetts

is reasonable and does not offend the notions of fair play and

substantial justice. The district court therefore properly

denied Tak How's Rule 12(b)(2) motion to dismiss for lack of

personal jurisdiction.

III.

Tak How next appeals the denial of its motion to

dismiss for forum non conveniens. The doctrine of forum non 

conveniens permits a trial court, on a discretionary basis, to 

-25-

dismiss a case where an alternative forum is a available in

another country that is fair to the parties and substantially

more convenient for them or the courts. Howe v. Goldcorp Invs., 

Ltd., 946 F.2d 944, 947 (1st Cir. 1991), cert. denied, 502 U.S. 

1095. Application of the doctrine is committed to the sound

discretion of the trial court, whose decision will not be

reversed absent a clear abuse of discretion. Mercier v. Sheraton 

Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992) (Mercier III) 

(appeal after remand of Mercier II, infra; we have previously 

referred to the district court's opinion as Mercier I), cert. 

denied, 508 U.S. 912. This Court finds an abuse of discretion 

only where the district court (1) failed to consider a material

factor, (2) substantially relied on an immaterial factor, or (3)

assessed the appropriate factors but clearly erred in weighing

those factors. Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 

423 (1st Cir. 1991) (Mercier II). Since there is a strong 

presumption in favor of a plaintiff's forum choice, the defendant

must bear the burden of proving both the availability of an

adequate alternative forum and that considerations of convenience

and judicial efficiency strongly favor litigating the claim in

the alternative forum. Id. at 423-424; Mercier III, 981 F.2d at 

1349.

We have emphasized that the doctrine of forum non 

conveniens is used to avoid "serious unfairness" and that 

plaintiff's choice of a forum will be disturbed only rarely.

Howe, 946 F.2d at 950 (citing Piper Aircraft Co. v. Reyno, 454 

-26-

U.S. 235, 259; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507). 

The Supreme Court has provided a list of relevant considerations.

"Private interest" factors include relative ease of access to

sources of proof, availability of compulsory process, comparative

trial costs, ability to enforce a judgment, "and all other

practical problems that make trial of a case easy, expeditious

and inexpensive." Gilbert, 330 U.S. at 508. "Public interest" 

factors include the practical difficulties of unnecessarily

imposing upon a busy court the obligation to hear a case more

fairly adjudicated elsewhere, the imposition on jurors called to

hear a case that has no relation to their community, and the

familiarity of the court with applicable laws. Id. at 508-509. 

One final principle informs our analysis in this case.

The Supreme Court has stated that,

Where there are only two parties to a
dispute, there is good reason why it
should be tried in the plaintiff's home
forum if that has been his choice. He
should not be deprived of the presumed
advantages of his home jurisdiction
except upon a clear showing of facts
which either (1) establish such
oppressiveness and vexation to a
defendant as to be out of all proportion
to plaintiff's convenience, which may be
shown to be slight or nonexistent, or (2)
make trial in the chosen forum
inappropriate because of considerations
affecting the court's own administrative
or legal problems.

Koster v. Lumbermens Mut. Co., 330 U.S. 518, 524. 

Based on these principles, we are unable to say that

the district court abused its discretion. Tak How's first

argument is that the district court failed to articulate its

-27-

reasons for denying the motion to dismiss. It is true that the

district judge chose to rule on the motion orally rather than

issue a written opinion; however, it is apparent from the hearing

transcript that the judge considered relevant factors. Before

ruling on the motion, the judge questioned counsel about the

plaintiffs' right to have a jury trial in Hong Kong, and he

stated that granting the motion would be outcome determinative

because, as a practical matter and due to additional burdens

under Hong Kong laws, it would be very difficult for the Nowaks

to bring suit there. The hearing transcript is certainly not as

detailed as the written opinion denying the jurisdictional

motion, but the court was entitled to rule on the motion orally.

The question here is whether the district court failed

to consider a material factor or failed to correctly weigh the

factors. Given that Tak How has the burden of proving the

elements of forum non conveniens, we shall review the factors 

alleged to justify dismissal that Tak How has put forth, bearing

in mind that Koster, supra, places a heavy burden on defendants 

where, as here, plaintiffs brought suit in their home forum.

There is no question that Hong Kong is an available forum, as Tak

How is subject to service of process in Hong Kong. Mercier II, 

935 F.2d at 424. There also appears to be no dispute that Hong

Kong would provide an adequate forum in the sense that its courts

recognize a similar cause of action. Tak How next contends that

the private interest factors of Gilbert, supra, weigh in favor of 

a Hong Kong forum: it notes that it would bear the expense of

-28-

transporting witnesses to the United States, that it might face

difficulty in joining third-party defendants in a Massachusetts

court, and that a Hong Kong court might not enforce the judgment

of a Massachusetts court. These factors do not constitute the

type of "oppressiveness and vexation" required by Koster 

disproportionate to the Nowaks' inconvenience of suing in Hong

Kong. The Nowaks would also have to transport witnesses to Hong

Kong and later seek to enforce a foreign judgment in their home

state. In addition, the Nowaks point to private interest factors

that weigh in their favor: they would face financial obstacles

because Hong Kong law prohibits contingent fee agreements and

requires that they deposit an amount equal to Tak How's costs

with the court; also, possible political instability in the

region could add further difficulties to litigation in Hong Kong.

Regardless of the difficulties the Nowaks might face in Hong

Kong, it is enough that Tak How failed to demonstrate either

oppressiveness to itself or only a slight or nonexistent interest

in convenience on the Nowaks' part. Koster, 330 U.S. at 524.  

Nor is Tak How able to demonstrate public interest

factors that make trial in Massachusetts inappropriate. It

points to the fact that Massachusetts choice-of-law rules require

application of Hong Kong law, and that a Hong Kong court would be

"more at home" with such laws. This concern is not sufficient to

overcome the presumption in favor of plaintiffs' chosen forum.

This Court has previously noted that "the task of deciding

foreign law [is] a chore federal courts must often perform."

-29-

Mercier III, 981 F.2d at 1357 (quoting Manu Int'l, S.A. v. Avon 

Prods., Inc., 641 F.2d 62, 68 (2d Cir. 1981)). We therefore give 

this factor little weight. Id. Tak How points to no other 

public interest factor that weighs against a Massachusetts forum.

-30-

IV.

For the foregoing reasons, the district court's

decision to deny Tak How's motions to dismiss for lack of

personal jurisdiction and on the grounds of forum non conveniens 

is AFFIRMED.

-31-